IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| HEON JONG YOO | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:21cv415 |
| | | (Crim. No. 6:18cr16(01)) |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Movant Heon Jong Yoo, proceeding *pro se*, filed this motion to vacate or correct his federal sentence under 28 U.S.C. §2255.  The motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Movant was convicted on eight counts under the Gun Control Act - seven counts of making a false statement to a federally licensed gun dealer, in violation of 18 U.S.C. §924(a)(1)(A), and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. §922(g)(4). He was sentenced to 97 months in prison.

On appeal, the Fifth Circuit affirmed the convictions on the seven counts of making a false statement but reversed the conviction for possession of a firearm by a prohibited person. *United States v. Heon Jong Yoo,* 813 F.App'x 949, 2020 U.S. App. LEXIS 17648, 2020 WL 3025444 (5th Cir., June 4, 2020).  On October 21, 2020, After the remand, Movant was re-sentenced to 41 months on each count, to be served concurrently, followed by a term of three years' supervised release. Movant has advised the Court that on July 30, 2021, he was deported to the Republic of Korea, where he currently resides.

The facts of the case, as set out in the Fifth Circuit's opinion, are as follows:

1

Heon Jong Yoo was involuntarily committed to treatment under New Jersey's temporary, ex parte procedure twice. First, in April 2013, Yoo agreed to be transported by the Rutgers University Police Department (RUPD) to a hospital for evaluation. There, a screener, a physician, and a psychiatrist determined that Yoo met the criteria for mental illness, was a danger to himself or others, and should be involuntarily committed to a mental institution. Based on their certifications, a New Jersey superior court judge found probable cause to believe that Yoo was in need of involuntary commitment. The judge issued a "Temporary Order for the Involuntary Commitment of an Adult," ordering that Yoo be committed to a hospital "pending a court hearing" in about two weeks. Yoo was discharged from the hospital four days before the scheduled hearing.

RUPD took Yoo to a hospital for another evaluation in September 2015. Once again, a screener, physician, and psychiatrist determined that Yoo met the criteria for mental illness and that he should be committed. And, once again, a New Jersey superior court judge ordered that Yoo be temporarily committed "pending a court hearing" 12 days later. Yoo was discharged six days before the scheduled hearing.

A few months later, in January 2016, Yoo tried to buy a gun. But because the National Instant Criminal Background Check System (NICS) revealed that Yoo had been "adjudicated as mental defective/committed to a mental institution," his purchase was denied. The FBI explained, *951 upon Yoo's inquiry, that he was a "prohibited person" under one of the 10 possible categories listed in §§ 921 and 922, but did not specify which one applied.

Yoo kept trying (often successfully) to buy firearms from 2016-2017. Each time, he had to fill out the Form 4473 issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). In response to a question on that form, Yoo stated that he was a citizen of the United States seven different times. He correctly identified his country of citizenship as South Korea—not the United States—twice.

Ultimately, Yoo was convicted of eight crimes under the Gun Control Act: seven counts of making a false statement to a federally licensed firearms dealer, in violation of § 924(a)(1)(A) (Counts 1-7), and one count of possession of a firearm by a prohibited person, in violation of § 922(g)(4) (Count 8).

The Fifth Circuit explained that under §922(g)(4), it is a crime for any person who has been adjudicated as a mental defective or who has been committed to a mental institution to possess, in or affecting commerce, any firearms or ammunition.[1] The court determined that Movant's

---

[1] 18 U.S.C. §922(g)(4) says that it is unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. *See also United States v. Tucker*, 47 F.4th 258, 261 n.7 (5th Cir. 2022) (stating that the phrase "mental defective" speaks "not to generalized mental illness but instead to an archaic class of intellectual disability.")

temporary hospitalization under an *ex parte* order, signed by a judge without a hearing, did not constitute "commitment to a mental institution" within the meaning of this statute.

With regard to the seven convictions under §924(a)(1)(A), Movant argued that there was insufficient evidence that the gun dealers were federally licensed and that there was insufficient evidence to show that he had made a false statement by selecting "USA" in response to the question concerning country of citizenship. The Fifth Circuit concluded that the evidence, including the use of certain forms as well as testimony by employees of each of the dealers, was sufficient to show that the dealers involved were federally licensed.

The Government offered evidence at trial that a U.S. national is a person who was born in the territories of the United States, specifically American Samoa or the Northern Mariana Islands. Movant argued that the definition of "national" from the Immigration and Nationality Act should apply; this defines a "national" as "a citizen of the United States or a person who, though not a citizen of the United States, owes permanent allegiance to the United States." The Fifth Circuit, citing *Omolo v. Gonzalez*, 452 F.3d 404, 408 (5th Cir. 2006), determined that one can only become a "national" by birth or by completing the naturalization process. Since Movant did not fit either prong, the court concluded that the evidence was sufficient to show that Movant was not a national of the United States. Because federally licensed firearms dealers are required to retain certain information, including the transferee's country of citizenship, a false answer to that question pertains to information that the dealer is statutorily required to maintain. The court therefore affirmed Movant's convictions on counts 1 through 7.

## II. Movant's Motion to Vacate or Correct Sentence

In his motion to vacate or correct sentence, Movant asserts in brief that: (1) he was detained in the Smith and Gregg County jails without adequate resources, which made it impossible to represent himself and fight his case, and was denied bail and subpoenas; (2) 18 U.S.C. §924(a)(1)(A) is void for vagueness; (3) his prosecution was malicious, vindictive, and selective; and (4) the jury was biased by local news coverage and a motion to change venue was denied at the last moment.

He has also filed a memorandum (docket no. 11) adding additional facts and arguments to his petition.

The Government filed an answer, to which Movant has filed a reply within a motion to recuse (docket no. 17). His grounds for relief will be addressed in turn.

A. General Standards for §2255 Proceedings

The first paragraph of 28 U.S.C. §2255 sets out the claims which are cognizable under the statute. These are: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.

The general rule is that §2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been raised on direct appeal. *United States v. Scruggs*, 691 F.3d 660, 666-67 (5th Cir. 2012); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). Instead, §2255 provides recourse only for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Gobert*, 137 F.3d 315, 318 (5th Cir. 1998).

In this regard, the Fifth Circuit has explained that issues which could have been but were not raised on direct appeal are not cognizable on collateral review unless the movant shows cause and prejudice for the procedural default or a fundamental miscarriage of justice. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Pierce*, 959 F.2d 1297, 1300-02 (5th Cir. 1992).

The Supreme Court has explained that attorney error short of constitutionally ineffective assistance of counsel does not constitute "cause" for a procedural default even if this default occurs on appeal rather than at trial; on the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim, while prejudice means that the error complained of, if left uncorrected, would result in

4

a miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995).

A "fundamental miscarriage of justice" refers to the conviction of a person who is actually innocent. *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *United States v. Sorrells*, 145 F.3d 744, 749 n.3 (5th Cir. 1998). A petitioner does not meet the threshold requirement of actual innocence unless he shows that in light of newly discovered evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), the Supreme Court stated that examples of such "new reliable evidence" include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, or critical physical evidence which was not presented at trial. Thus, the actual innocence exception is limited to cases in which the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999).

### B. Pre-Trial Confinement and Other Claims

Movant asserts that he was in the Smith County Jail from April 6, 2018 to April 26, 2018, and then in the Gregg County Jail from April 26, 2018 to May 16, 2019. He says that the county jails were "significantly below the minimum required standards" and did not have law libraries, and that he was unable to authenticate documents, call witnesses, or receive constitutionally required due process so as to be able to fight his case. He complains that U.S. District Judge Robert Schroeder promised that he would transfer Movant to a facility with law library access, but never did so. As a result, he states that he was forced to go to trial without any legal resources other than what his friends and family sent him and infrequent access to stand-by counsel. Movant says that he wanted to call the police officer from Rutgers who took him to the emergency room, along with judges and attorneys assigned to his commitment hearings.

Next, Movant argues that because he was not in the category that would fall under the presumption of detention over bail, he was entitled to bail under 18 U.S.C. §3142, but U.S.

5

Magistrate Judge John Love decided to detain him contrary to the statute. He says that public defender Kenneth Hawk "pretty much intimidated me into waiving my preliminary and detention hearing without my fully informed consent" and says that there was "no way I could have known about the Federal Rules of Criminal Procedure."

Movant also complains that he was "legally and factually entitled to bail," but he was "fraudulently detained." He says that at his detention hearing, there was no evidence other than "a bunch of hearsay" by witnesses "later proven to be unreliable," including James Reed and Gregory Harry. Nonetheless, Movant complains that the Magistrate Judge ordered him detained. Another detention hearing was held on October 10, 2018, at which Movant states that he actually caught the prosecution's witnesses committing perjury, but the district judge again ordered him detained.

Movant states that under 18 U.S.C. §3164, he could only be detained for 90 days, but he did not have access to a law library so he did not know this to be able to raise it. He also complains about a pre-trial habeas petition seeking release, cause no. 6:18cv655, being denied.

Movant further asserts that Judge Schroeder and Assistant U.S. Attorney Frank Coan told him that he was not entitled to law library access because he had stand-by counsel, but his stand-by counsel was not adequate in communicating with him. He requested Charles Van Cleef, whom he had retained, to serve as stand-by counsel, but Magistrate Judge Mitchell denied it and Judge Schroder would not rule on his appeal, so Movant states that he was stuck with Kenneth Hawk and then Jeff Haas, two attorneys who did not properly assist him.

After complaining that his subpoenas were denied because he had not "identified an inability to pay," despite having been deemed indigent, Movant complains that the U.S. Attorney's office blocked his calls. He filed motions to compel them to unblock, but Judge Schroeder would not help him.

Movant also complains that he commenced his appeal *pro se*, but the appellate court would not grant him bail pending appeal. He asked Charles Van Cleef to represent him on appeal, but Van

Cleef failed to raise certain points which Movant says he should have, so they are being raised in the §2255 proceeding.

The Government argues that these claims are procedurally barred because they should have been but were not raised on direct appeal. The Government also notes that Movant was repeatedly warned by the Court that it would not be in his best interest to represent himself; having insisted on doing so, the Government contends that Movant cannot now complain of the quality of his own defense.

In addition, the Government asserts that Movant has failed to show prejudice from the alleged deficiencies complained of. He prepared numerous motions, conducted *voir dire*, delivered opening and closing statements, questioned witnesses on direct and cross-examination, and raised objections. The Government says he offers nothing to suggest that had he been incarcerated elsewhere, he likely would have been acquitted.

In his response, Movant states that he is not complaining about the quality of his defense "for the most part," but about how the Court, the prosecution, and the U.S. Marshal's Service interfered with his right to self-representation. He says that the lack of law books hindered him greatly, stating that he filed more than 250 motions with "only a couple legal books, flex pens, and note pads at my disposal." He also contends that he was unable to contact the individuals and organizations whom he needed to contact to call witnesses in his favor and authenticate evidence. He also complains that he was unable to learn how to file a subpoena properly and that "had I been able to call witnesses and produce convincing PowerPoints and such to make a proper legal argument, I would have been far more persuasive to the jury."

This claim should have been raised on direct appeal, but was not. In his original motion to vacate, Movant explains that "my atty believed that this was a stronger case for 2255." (Docket no. 1, p. 4). In his supplemental motion, Movant states that "I told Charles Van Cleef to represent me [on appeal], which despite being a great attorney himself, did not raise couple things that I would

have raised on the direct appeal, which I am raising here on my 2255 petition." (Docket no. 11, p. 7).

In his response to the Government's answer, Movant concedes that "it should also be noted that I was represented by an attorney during the direct appeal. I had asked my attorney to raise issues such as malicious prosecution and lack of law library access, but he did not, exercising his best professional judgment and picking the strongest arguments. Had I represented myself, which I did not due to inadequate resources during incarceration, I would have raised such issues." (Docket no. 17, p. 9).

Movant has fallen well short of showing cause for the failure to raise this issue on direct appeal or prejudice resulting from such failure. Nor has he set out a colorable showing of actual innocence. Thus, his claim on this point is not cognizable in a §2255 proceeding. *Lopez*, 248 F.3d at 433.

Movant's claim on this point fails on the merits as well. The Fifth Circuit has held that a defendant who rejects the assistance of court-appointed counsel has no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial. *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996); *Danmola v. United States*, 736 F.App'x 514, 2018 U.S. App. LEXIS 25430 (5th Cir., September 7, 2018). Plaintiff's claim that he was denied access to a law library or legal materials lacks merit on its face.

A detention hearing was held on April 23, 2018. A temporary order of detention was issued on April 24, directing that Plaintiff be held in custody pending a hearing on April 30. At that hearing, the Court received testimony and documentary evidence and determined that Movant should be detained. This finding was based on the pre-trial services report which recommended detention, evidence that Movant had made repeated threats of harm toward individuals and groups together with the fact that the charges involved making false statements in order to obtain firearms, and Movant's false statements concerning his citizenship. The Court thus concluded that there were

no conditions which would adequately assure the safety of the community or Movant's appearance at trial. (Crim. No. 6:18cr16, docket no. 37).

Movant appealed the order of detention to the district judge, who conducted a hearing on October 10, 2018. Judge Schroeder found the evidence against Movant to be credible and determined that Movant's claims that he was improperly detained based on perjured testimony, hearsay, and the submission of false police reports were unsupported by any evidence. Movant's appeal was therefore overruled.

Movant does not have a constitutional right to pre-trial release rather than detention. *See generally U.S. v. Stanford*, 341 F.App'x 979, 2009 U.S. App. LEXIS 19032, 2009 WL 2591361 (5th Cir., August 14, 2009). His argument consists essentially of disagreeing with the findings of the Magistrate Judge and the District Judge, which is not sufficient basis for a motion to vacate or correct sentence. His unsubstantiated assertions that the witnesses lied likewise do not show constitutional error.

In any event, Movant has now been convicted and so his claims concerning pre-trial detention are moot. *See U.S. v. Robinson*, 40 F.3d 384, 1994 U.S. App. LEXIS 41598, 1994 WL 652470 (5th Cir., November 1, 1994) (in §2255 motion, Fifth Circuit stated that "this court will not address Robinson's allegations of illegal pretrial detention and denial of bail because that claim is moot. *See Powers v. Schwartz*, 587 F.2d 783, 783-84 (5th Cir. 1979)." Movant's appeal of the denial of pre-trial bail was dismissed as moot because he was tried while the appeal was pending. *United States v. Yoo*, slip op. no. 18-41027 (5th Cir., January 2, 2019) (Crim. No. 6:18cr16, docket no. 314). Movant's claim on this point is without merit.

Movant asserts that under 18 U.S.C. §3164, he should have been released from pre-trial detention after 90 days, but he had no access to a law library so he was unaware of the statute. As stated above, Movant rejected the assistance of court-appointed counsel and thus had no constitutional right to law library access. To the extent Movant raises the claim of failure to release him after 90 days as a separate ground for relief, this claim has no merit; the only relief available

under §3164 for a violation of that section is "the automatic review by the court of the conditions of release." Movant cannot secure an overturning of his conviction as a result of a violation of §3164. *Cf. United States v. Diaz-Alvarado*, 587 F.2d 1002, 1006 (9th Cir. 1978) (violation of 18 U.S.C. §3164 cannot support reversal of a conviction).

In addition, the excludable delay periods of 18 U.S.C. §3161 also apply to §3164. *U.S. v. Colbert*, Crim. No. 08-cr-205-08, 2009 U.S. Dist. LEXIS 64593, 2009 WL 2243793 (W.D.La., July 24, 2009). Movant makes no showing that he would have been released had he filed a motion for such release under §3164. 18 U.S.C. §3161(h)(1)(D) provides for the exclusion from the 90 day period of "delay resulting from any pre-trial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." In the present case, Movant acknowledges that he filed some 250 motions. The requirement of handling such a preposterous number of motions necessarily resulted in significant excludable delay, and Movant has failed to show a speedy trial violation in light of the delays occasioned through his own motions practice. Furthermore, Movant sought continuances on three separate occasions (Crim. No. 6:18cr16, docket no.'s 25, 27, and 34), and those time periods are likewise not counted toward the 90 day period. Movant's claim on this point is without merit.

Movant next complains that his stand-by counsel inadequately communicated with him and did not provide his cell phone number to Movant. He asked that Charles Van Cleef be appointed as stand-by counsel, which Van Cleef agreed to, but the Court denied the request, leaving Movant with Kenneth Hawk and, later, Jeff Haas.

The record shows that on August 3, 2018, Movant filed a motion stating that he had retained the services of attorney Charles Van Cleef and asking that Van Cleef be substituted in place of Mick Mickelson. This motion was granted by the undersigned on August 14, 2018 (Crim. No. 6:18cr16, docket no. 33). Three days later, on August 17, 2018, Movant filed a motion stating that he has terminated Van Cleef's representation and asking to be allowed to proceed *pro se* (Crim. No. 6:18cr16, docket no. 39). A hearing was held on August 23, and the minutes of this hearing show

that Movant was adamant that he be allowed to represent himself despite being advised of the rights he was giving up by choosing to represent himself.  The Court ruled that Movant would be allowed to represent himself and Van Cleef would be allowed to withdraw, and the Federal Public Defender would be appointed as standby counsel; however, Movant was advised that he was on his own regarding self-representation and that the Public Defender would not actively represent him.

Having terminated Van Cleef's representation, Movant did not have the right to have Van Cleef appointed as standby counsel.  *See United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007); *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013). In addition, this claim is waived because it could have been but was not brought on direct appeal, and Movant has not shown cause and prejudice nor a fundamental miscarriage of justice. *Lopez*, 248 F.3d at 433. This claim is without merit.

To the extent Movant complains that stand-by counsel was ineffective, this claim lacks merit because he has no constitutional right to stand-by counsel and thus is not entitled to relief for the alleged ineffectiveness of stand-by counsel.  *United States v. Oliver*, 630 F.3d 397, 413-14 (5th Cir. 2011), *citing United States v. Morrison*, 153 F.3d 34, 55 (2nd Cir. 1998).  Movant asserted his right to self-representation, in the face of multiple admonishments advising him otherwise, and retained control of his own defense. There is no federal right to hybrid representation where the defendant shares the duties of conducting his defense with a lawyer.  *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Movant's claim on this point is without merit.

Movant asserts that he was denied subpoenas because he did not "identify his inability to pay."[2] On October 9, 2018, the Court entered two orders denying Movant's motion for subpoenas. In the first of these, docket no. 118, Movant asked for subpoenas for "any criminal affidavits against

---

[1]At a hearing before Judge Schroeder on October 10, 2018, Movant testified that his family "will support me with full residence [sic], like life necessities." Movant had retained two attorneys in succession. The Court stated that "given the financial resources that have been described that you have been provided with by your family, I am not sure it is appropriate for the Court's funds to be used for service and compliance with subpoenas, including witness fees." (Crim. No. 6:18cr16, docket no. 171, pp. 191-194).

the defendant for terroristic threat" and "any court order for his mental health." This motion was denied because Movant had not identified a financial ability to pay for subpoenas and because the motion did not identify any specific documents, state the location of those documents, or identify who possesses those documents.

In the second of these orders (Crim. No. 6:18cr16, docket no. 120), the Court noted that Movant asked to subpoena 166 witnesses for his hearing. The Court observed that Movant had not identified a financial inability to pay for the witness' fees, nor did Movant state the necessity of the witness' presence for an adequate defense or identify the expected testimony or relevance of any of the proposed witnesses. Movant also did not provide addresses for any of the proposed witnesses except for one.

This claim should have been but was not raised on direct appeal and is not cognizable on §2255 review absent a showing of cause and prejudice or a fundamental miscarriage of justice. In any event, it also lacks merit. Although Movant complains of the denial of these motions based on failure to identify his inability to pay, the record shows that these motions were denied for multiple reasons. Because Movant has not shown that the denial of the subpoenas was error, his claim on this point lacks merit.

Movant complains that he was unable to contact the U.S. Attorney's Office, which blocked calls from him. He also asserts that he was unable to contact the U.S. District Clerk's Office. This claim should have been but was not raised on direct appeal, and thus is not cognizable on §2255 review absent a showing of cause and prejudice or a miscarriage of justice. Additionally, as the Court stated in an order denying Movant's motion for a direct extension to the Clerk's office via telephone, "given Defendant's numerous filings, it appears that he is fully capable of communicating with the Court through submitting entries on the docket." (Docket no. 372, p. 29). As a *pro se* litigant, Movant was exempted from the requirement of conferring with opposing counsel under Local Rule CR-47(a)(3). Movant has not shown how the outcome of his trial was affected by the

12

purported inability to communicate with opposing counsel or the Clerk. His claim on this point is without merit.

Movant complains about the denial of a pre-trial habeas petition which he filed, civil action no. 6:18cv655. He complains that the petition was denied "under false pretexts" and that the Court took more than three months to rule on it even though it had been filed as an "emergency petition."

Court records show that the petition was denied as premature. No appeal was taken. The denial of Movant's pre-trial habeas petition is not a basis for relief in Movant's post-conviction §2255 proceedings. This claim is without merit.

C. Void for Vagueness

Movant contends that 18 U.S.C. §924(a)(1)(A) concerns "information required to be kept," and the warnings and instructions on Form 4473 also are not clear. He says that the statutes and even the courts cannot agree on what "information to be kept" pertains to. Movant asserts that under 18 U.S.C. §922, the "information to be kept" is name, age, and address, but indicates that it is not clear whether "citizenship" is included.

According to Movant, the statute refers to "whoever knowingly makes a false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter." He argues that this section is vague, but the prosecutors relied on an overly broad interpretation and the ambiguity of the statute to "repeatedly interject defective and irrelevant arguments and irrelevant codes from the C.F.R."

The Fifth Circuit and other courts have rejected the claim that 18 U.S.C. §924(a)(1)(A) is unconstitutionally vague. *U.S. v. Shipley*, 546 F.App'x 450, 2013 U.S. App. LEXIS 20996, 2013 WL 5646965 (5th Cir., October 17, 2013); *U.S. v. Ibarra*, 472 F.App'x 819, 2012 U.S. App. LEXIS 8711, 2012 WL 1497973 (9th Cir., April 30, 2012), *citing U.S. v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006). Furthermore, in affirming Movant's conviction, the Fifth Circuit rejected Movant's

contention that the applicant's country of citizenship is not "information required to be kept" under 18 U.S.C. §924(a)(1)(A). The court explained as follows:

> Recall that under § 924 (a)(1)(A), it is a crime to make a false statement "with respect to the information required by this chapter to be kept in the records" of a federally licensed gun dealer. Yoo argues that an applicant's country of citizenship is not "information required by this chapter." Yoo is incorrect.

> "This chapter" means chapter 44 of title 18 of the United States Code. A statute within chapter 44 directs gun dealers to "maintain such records ... as the Attorney General may by regulations prescribe." "Because of that statutory section, the information that the Attorney General's regulations compel a dealer to keep is information 'required by this chapter.' One of those regulations instructs dealers to "obtain a 4473 from the transferee showing," among other things, "the transferee's country of citizenship[.]" Moreover, since the regulations require that licensed dealers retain each Form 4473, "a false answer on that form ... pertains to information a dealer is statutorily required to maintain."

*United States v. Yoo*, 813 F. App'x at *952 (footnotes omitted). This holding refutes Movant's contention that the statute is unconstitutionally vague, and Movant cannot revisit the holding on direct appeal in a §2255 proceeding. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

The Fifth Circuit's decision likewise refutes Movant's contention that the information "required to be kept" is name, age, and address, all of which he answered correctly, but not citizenship. While Movant argues that the law is void for vagueness or the Fifth Circuit "knowingly and willingly ruled against the congressional statute which would be both dereliction of duty and insubordination, which are judicial misconduct," the district court cannot address alleged errors on the part of the Fifth Circuit. This claim is without merit.

D. Malicious Prosecution

Movant argues that the entire case is "fruit of a poisonous tree," stemming from an "eight-year malicious and vindictive conspiracy to deprive my constitutional rights." He contends that a person named Brian Barker refused to inform him of the "adjudicated mentally defective" entries and that a witness named Mary Victoria Larsen committed perjury by contradicting herself on the witness stand about whether Movant had been adjudicated mentally defective. She said she had

little or no knowledge of his personal case but then stated that he had been committed to a mental institution. He states that "I also caught prosecutors, Government agents, and witnesses lying on my case several times and exposed them," and claims that he received significantly higher sentences than others who had the same charges.

According to Movant, the Government Accountability Office Report says that "no one is investigated or prosecuted for 18 U.S.C. §924(a)(1)(A) unless there is an aggravating factor." He attaches a copy of a document labeled "United States Government Accountability Office - Report to the Ranking Member Subcommittee on Commerce, Justice, Science, and Related Agencies, Committee on Appropriations, House of Representatives." Movant's document is entitled "Law Enforcement - Few Individuals Denied Firearms Purchases are Prosecuted and ATF should Assess Use of Warning Notices in Lieu of Prosecution." This document discusses persons who falsify information on a firearms form and are denied a purchase, saying that such cases are generally referred for prosecution when aggravating circumstances exist; such cases can require significant effort for prosecutors relative to the short length of punishment and may offer little value to public safety since the offender does not obtain the firearm. (Docket no. 17-1, pp. 2, 26).

Movant says that his "aggravating factor" was that he was a prohibited person under §922(g)(4), meaning he had been adjudicated as a mental defective or committed to a mental institution. Movant argues that his mental health records are "riddled with inconsistencies and blatant false statements," but they have nonetheless been used against him repeatedly, although a neuropsychological exam proved that he was not mentally ill.

As noted above, the Fifth Circuit reversed Movant's conviction for possession of a firearm by a prohibited person, upon a determination that he had not been "committed to a mental hospital" for purposes of the offense. The GAO report is not law and in any event refers to the prosecution of unsuccessful firearms purchasers, while Movant did successfully purchase firearms on multiple occasions while falsely claiming United States citizenship. The fact that Movant was prosecuted for multiple attempts to purchase firearms with false statements despite not having a countable

commitment to a mental institution does not show that he was the subject of a malicious or vindictive prosecution.

Malicious prosecution is a common law tort, for which the typical remedy is damages; thus, claims of malicious prosecution are normally viewed in the §2255 context as allegations of prosecutorial misconduct. *See Hill v. United States*, civil action no. 13-03427, 2014 U.S. Dist. LEXIS 104431, 2014 WL 3767593 (C.D.Ill., July 31, 2014); *Donnell v. United States*, civil action no. 4:20cv714, 2021 U.S. Dist. LEXIS 251456, 2021 WL 6618464 (E.D.Tex., December 15, 2021), *Report adopted* 2022 U.S. Dist. LEXIS 29924, 2022 WL 507488 (E.D.Tex., February 18, 2022, *aff'd* slip op. no. 22-40296, 2022 U.S. App. LEXIS 22764, 2022 WL 3370800) (5th Cir., December 12, 2022).

Movant's claim of prosecutorial misconduct should have been but was not raised on direct appeal, and thus is not cognizable in a §2255 proceeding absent a showing of cause and prejudice or a fundamental miscarriage of justice, which Movant has not made.

Movant's prosecutorial misconduct claim also lacks merit. In order to set out a claim of vindictiveness, a movant may either prove actual vindictiveness by presenting objective evidence that the prosecutor's actions were designed to punish a defendant for exercising his legal rights, or by showing sufficient facts to give rise to a presumption of vindictiveness. *U.S. v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Movant has offered no objective evidence, nor any facts sufficient to give rise to a presumption of vindictiveness; his response to the Government's answer simply discusses how his mental health records are "riddled with inconsistencies and blatant false statements" and asserts that these records were used "over and over again," including in the denial of bail.

In a "motion for malicious prosecution" (Crim. No. 6:18cr16, docket no. 62), Movant asserts that the indictment does not comply with 18 U.S.C. §922 or the purposes of the Gun Control Act or the Brady Handgun Violence Protection Act, because he is "absolutely a law abiding citizen who responsibly owned and used firearms for strictly lawful activities." He argued that he was detained

because of perjurious statements such as "he is a prohibited person," causing him to be detained despite having no criminal convictions.  Movant claimed that Coan also lied by saying that Movant had admitted to being schizophrenic and that the charge of possession of a weapon by a prohibited person was added when he refused to accept a plea deal. He further stated that a pistol and 458 rounds of ammunition were forfeited by the ATF, which he challenged but the ATF refused to respond. He also complained about being questioned over his competency and mental health, that he was confined in substandard jails in an effort to force a plea, and malicious police reports were filed against him. Movant complains that colleges which he has attended persecuted him for his political views, including "excessive responses" by campus police, and that his concealed handgun license was unlawfully revoked, apparently due to a pending criminal charge in state court. In a supplement to this motion (Crim. No. 6:18cr16, docket no. 138), Movant asserts that the filing of a superseding indictment was proof of maliciousness.

The Government filed a response to the original motion (Crim. No. 6:18cr16, docket no. 101) asserting that charges were pursued against Movant because there was probable cause that a crime was committed, as shown by the issuance of an arrest warrant by a United States Magistrate Judge and the return of an indictment by a federal grand jury.  The Government also observed that adding more charges after Movant refused a plea offer does not warrant a presumption of vindictiveness, citing *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978).  Movant filed a reply (Crim. No. 6:18cr16, docket no. 141) insisting that he had proven all of his claims and accusing Coan of lying.

Movant also filed a "notice of malicious prosecution" (Crim. No. 6:18cr16, docket no. 217), a notice of filing exhibits for malicious prosecution which included a Tyler police report, an indictment for a state law aggravated assault charge, the plea offer, and a letter to Mickelson demanding answers to various questions about the conduct of the case (Crim. No. 6:18cr16, docket no. 284), a supplement to his motion complaining about a press release from the U.S. Attorney's Office concerning the guilty verdict in his case (Crim. No. 6:18cr16, docket no. 336), another supplement complaining of the use of his state criminal charges in sentencing and demanding that

Machicek be sanctioned and disbarred (Crim. No. 6:18cr16, docket no. 363), and another supplemental motion complaining that the Court approved entry of 28 C.F.R. §478 into the exhibits but it was not entered in the exhibit list, and an alleged attempt to elicit perjury by Coan at trial (Crim. No. 6:18cr16, docket no. 417). A review of these documents and exhibits fails to show any objective evidence that the prosecutors' actions were designed to punish Movant for exercising his legal rights, nor do they demonstrate sufficient facts to give rise to a presumption of vindictiveness. Movant's claim on this point is without merit.

E. Jury Bias

In his original petition, Movant asserts that local news coverage about him would have biased the jury, a motion for change of venue was denied at the last minute before trial, his demand for a bench trial was denied even though the prosecution did not object and the case was "purely legal," and the court clerk made him swear in on the Christian God in front of jurors from a heavily Christian region, despite knowing that Movant was not himself a Christian. When he refused to swear on the Christian God, Movant says that the jurors' perception deteriorated even further, to the best of his knowledge. These are matters which should have been but were not raised on direct appeal, and as such are foreclosed from §2255 review absent a showing of cause and prejudice or a miscarriage of justice, which Movant has not put forth.

Movant's only argument on this point in his supplement reads "Reference MC# 73, 108, 125, 127, 136, 139, 185." The Court is not obligated to scour the record in search of factual issues to support a *pro se* litigant's contentions; rather, it is that litigant's obligation to direct the Court to the relevant evidence. *Perez v. Johnson*, 122 F.3d 1067, 1997 U.S. App. LEXIS 42158, 1997 WL 464599 (5th Cir., October 14, 1997); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

Of the documents cited by Movant, criminal docket no. 73 is Movant's motion for change of venue, asserting that the Eastern District of Texas is "highly prejudiced" against him, law enforcement in East Texas "responded to and accepted numerous false, malicious, and retaliatory calls" against him, but when a crime was committed against him, they were "vindictively negligent

and unprofessional." Movant asserts that the people of East Texas "do not know the definition of an emergency, nor do they respect Bill of Rights." He claims that he was reported to law enforcement for his "views and opinions," and he has a false reputation within the Eastern District as a "white supremacist or neo Nazi." Criminal docket no. 108 is the Government's response to this motion, arguing that Movant's contentions fail to show a level of prejudice sufficient to justify a venue change.

Criminal docket no. 125 is the response by the Government to a motion by Movant to disqualify Assistant U.S. Attorney Lucas Machicek, which motion argued that Machicek has a conflict of interest because he once prosecuted Movant in state court. The Government contended that no conflict existed because prosecutors may prosecute defendants multiple times. Criminal docket no. 127 is the response by the Government to a motion by Movant to strike the search warrant, which motion argued that the warrant was a pretext to seize property unrelated to the charge and was part of a conspiracy to deprive him of his Second Amendment rights. The Government argued that the warrant was issued based upon probable cause and was sufficiently particular.

Criminal docket no. 136 is a motion by Movant to dismiss the prosecution with prejudice due to "professional misconduct, prosecutorial misconduct, judicial misconduct, official misconduct, violation and abuse of discretion, including but not limited to the criminal affidavit, search warrant and its application, court hearings and appearances, detention issue, and other severe violations of the accused's due process." Criminal docket no. 139 is an objection by Movant to the unsealing of the grand jury testimony, the warrant, and the application. None of these documents set forth any valid basis for §2255 relief.

The Fifth Circuit has held that a defendant challenging his conviction based on denial of an impartial jury due to adverse pretrial publicity must demonstrate an actual, identifiable prejudice attributable to that publicity on the part of members of his jury. *Mayola v. State of Alabama*, 623 F.2d 992, 996 (5th Cir. 1980), *citing Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). However, if a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity

19

that so pervades or saturates the community as to render a fair trial by an impartial jury drawn from that community virtually impossible, jury prejudice is presumed and there is no further duty to establish bias. *See Rideau v. Louisiana*, 373 U.S. 723, 727, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (overturning conviction where petitioner's uncounselled conviction had been filmed, recorded, and then telecast three times by the local television station to large audiences in the Louisiana parish from which the jury was drawn, and in which the petitioner was tried less than two months later).

Movant has not shown any actual, identifiable prejudice on the part of members of the jury, much less that the community was saturated by adverse pretrial publicity. In denying the motion for change of venue, the Court observed that Movant did not identify any specific media coverage or statements made by the media, and the Government's response to Movant's motion to change venue identified three news stories described as factual and non-inflammatory. In the absence of any showing of prejudice, Movant's claim on this point is without merit.

Docket no. 185, the final document referenced by Movant in this ground, is a waiver of jury trial. This waiver was discussed at the pre-trial conference on November 9, 2018. The Government did not take a position on Movant's request for a waiver, but the District Judge observed that under Fed. R. Crim. Pro. 23, the Government must consent to a bench trial and the Court must approve it. In the present case, the District Judge stated that Movant had filed numerous motions alleging judicial misconduct, which would place a judge deciding guilt or innocence in a "fairly awkward and untenable position." The Judge also stated that "I think it is possible that you are waiving your right to trial by jury in an effort to add an additional ground or basis for appeal in the event that you are convicted." Movant's contention that he was denied a bench trial should have been but was not raised on direct appeal, and as such is foreclosed from §2255 review absent a showing of cause and prejudice or a miscarriage of justice.

The Fifth Circuit has held that there is no constitutional right to a non-jury trial unless the trial court so consents. *United States v. Johnson*, 496 F.2d 1131, 1136 (5th Cir. 1974). In approving the waiver of a jury trial, the district court should evaluate both the ability of the defendant to make

an intelligent decision and his awareness of the benefits and burdens of foregoing a jury trial, and the substantial responsibility of trial courts to jealously preserve jury trials, the constitutionally preferred method of disposing of criminal cases. *U.S. v. Martin*, 704 F.2d 267, 272 (6th Cir. 1983). Consequently, the court should not lightly approve of jury trial waivers. *Id*, *citing Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). Movant has not shown any constitutional violation in the fact that the trial court declined to approve his jury trial waiver. His claim on this point is without merit.

Movant next contends that the court clerk made him swear in on the Christian God in front of jurors from a heavily Christian region, despite knowing that Movant was not himself a Christian. When he refused to swear on the Christian God, Movant asserts that the jurors' perception deteriorated even further, to the best of his knowledge.

The transcript of trial at this point states in relevant part as follows:

THE COURT:      Call your next witness.

MR. YOO:        That's it, sir. I would like to self-testify.

THE COURT:      Take the stand.

MR. YOO:        May I testify from there?

THE COURT:      No, you take the witness stand.

MR. YOO:        Oh, well, I need to present.

THE COURT:      You can take it to the witness stand. If you will raise your right hand, and Mrs. Schroeder will swear you in.

        (Oath administered)

MR. YOO:        I am not a Christian, ma'am. But I do solemnly affirm in the name of President Washington.

(Crim. No. 6:18cr16, docket no. 378, pp. 66-67).

This claim should have been but was not raised on direct appeal, and as such is not cognizable in a §2255 proceeding absent a showing of cause and prejudice or a miscarriage of

justice.  In any event, it lacks merit on its face.  Movant's assertion that the jurors' perception of him "deteriorated even further, to the best of his knowledge," is entirely speculative and thus cannot support §2255 relief.  In *United States v. Hoffman*, 806 F.2d 703, 710-11 (7th Cir. 1986), evidence of a criminal defendant's affiliation with the Rev. Sun Myung Moon and the Unification Church was offered at trial. The defendant argued that many Americans "look askance on their fellow citizens who join such cult style Eastern religions," asserting that the evidence of his prior affiliation with this church would likely cause a jury to "treat a defendant it knew to be a Rev. Moon follower much more unfairly than it would a defendant whose religion was not known to the jury or whose religion was known to be a mainline one, such as Protestantism or Catholicism." The Seventh Circuit stated that this argument was an "unsupported assertion" which was "purely speculative," explaining that the fact that the defendant was a member of a religious minority alone does not give rise to a presumption that jurors of different religious affiliations would treat that defendant differently than they would treat any other defendant.

While the precise language of administration of the oath does not appear in the record, Movant himself announced to the jury that he is not a Christian.  The fact Movant is not a Christian does not give rise to a presumption of different treatment, and Movant's contention that the jurors' perception of him "deteriorated even further" upon learning that he is not a Christian is likewise an unsupported assertion which is purely speculative. His claim on this point is without merit.

<u>Certificate of Appealability</u>

An appeal may not be taken to the court of appeals from a final order in a §2255 proceeding unless a circuit justice or judge issues a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  Rule 11 of the Rules Governing §2255 Proceedings in the United States District Courts provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued only if the movant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2).

Under the controlling standard, the movant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), *quoting Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). This requires a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *United States v. Munoz*, slip op. no. 19-31010, 2021 U.S. App. LEXIS 3113, 2021 WL 406102 (5th Cir., February 4, 2021), *quoting Slack*, 529 U.S. at 484.

Movant has not made a substantial showing of the denial of a constitutional right. Nor has he shown that reasonable jurists could debate whether his motion to vacate or correct sentence should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Consequently, he is not entitled to a certificate of appealability.

## RECOMMENDATION

It is accordingly recommended that the above-styled motion to vacate or correct sentence be dismissed with prejudice. It is further recommended that a certificate of appealability be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 16th day of May, 2023.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE